884 F.2d 581
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Richard D. STERN, Defendant-Appellant.
 No. 89-3070.
 United States Court of Appeals, Sixth Circuit.
 Aug. 24, 1989.
 
 Before BOYCE F. MARTIN, Jr., WELLFORD and MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant-appellant Richard D. Stern appeals from the sentence of the district court imposed upon his plea of guilty to one count of possession of approximately four kilograms of cocaine with intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1). For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 Defendant was indicted on August 18, 1988, and pleaded not guilty on August 26, 1988. He then filed numerous pretrial motions which were denied, and on September 28, 1988, defendant entered into a plea agreement with the government. Defendant agreed to plead guilty in exchange for the government's promises: (1) to indicate to the United States Probation Office that it had no evidence that firearms found at defendant's residence were brandished or used to facilitate drug activity, (2) to indicate to the Probation Office that the government believed defendant was a minor participant in the criminal activity and not to object to defendant's characterization of his participation as minimal, (3) to recommend to the Probation Office that defendant's sentencing level be decreased for acceptance of responsibility, and (4) to recommend to the district court that defendant be sentenced at the "low end" of the guideline range.
 
 
 3
 After the plea agreement was entered on the record, the district court discussed the agreement with defendant who then pleaded guilty. Following the court's review of the presentence investigation report, the court applied the United States Sentencing Guidelines which resulted in a sentencing range of 97 to 121 months. In compliance with the agreement, the government recommended to the district court that defendant be sentenced at the low end of the range; however, the district court sentenced defendant to 108 months imprisonment. This timely appeal followed.
 
 B.
 
 4
 The plea agreement between the government and defendant was made a part of the record. At this time, the district court explained to defendant the limited nature of his plea agreement. The following colloquy occurred:
 
 
 5
 THE COURT: [D]o you ... understand that the maximum possible penalty for this offense is a period of imprisonment of not less than five years up to a maximum of 40 years, a fine of $2 million, a $50 special assessment, and at least four years of supervised release?
 
 
 6
 MR. STERN: Yes, sir.
 
 
 7
 THE COURT: Do you understand if the Court accepts your plea of guilty, it can impose this maximum penalty?
 
 
 8
 MR. STERN: Yes, sir.
 
 
 9
 * * *
 
 
 10
 * * *
 
 
 11
 THE COURT: Now, under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining sentences in criminal cases. Have you and your attorney discussed how the sentencing guidelines would apply to your case?
 
 
 12
 MR. STERN: Yes, sir.
 
 
 13
 THE COURT: Do you understand that the Court would not be able to determine the guidelines sentence for your case until the pre-sentence report has been completed and you and the Government have had the opportunity to challenge the facts reported by the probation officer?
 
 
 14
 MR. STERN: Yes, sir.
 
 
 15
 * * *
 
 
 16
 * * *
 
 
 17
 THE COURT: Now, Mr. Stern, do you understand that after it has been determined what guideline applies to a case, that the judge still has the authority in some circumstances to impose a sentence that is more severe or less severe than the sentence called for by the guidelines?
 
 
 18
 MR. STERN: Yes, sir.
 
 
 19
 THE COURT: And do you also understand that under some circumstances, either you or the Government may have the right to appeal any sentence that I impose?
 
 
 20
 MR. STERN: Yes, sir.
 
 
 21
 THE COURT: And do you understand that under this new system, parole has been abolished and that if you are sentenced to prison, you will not be released on parole?
 
 
 22
 MR. STERN: Yes, sir.
 
 
 23
 THE COURT: And do you understand that if the sentence you receive is more severe than you expected, you will still be bound by your plea and you will have no right to withdraw it?
 
 
 24
 MR. STERN: Yes, sir.
 
 
 25
 * * *
 
 
 26
 * * *
 
 
 27
 THE COURT: Very well. Now, Mr. Stern, [the prosecutor] has indicated that part of your plea agreement is a commitment by the United States Attorney's office to make certain recommendations to the probation office, specifically that the United States Attorney has agreed to recommend to probation that they report in the pre-sentence investigation report that you were a minor participant in the distribution of this cocaine. Now, do you understand that the probation office is not bound to accept that recommendation?
 
 
 28
 MR. STERN: Yes, sir.
 
 
 29
 THE COURT: And that they may in fact reject it and end up reporting to the Court something different than that?
 
 
 30
 MR. STERN: Yes, sir.
 
 
 31
 THE COURT: And that any expectations that you may have regarding the nature of your sentence in connection with that particular part of the plea agreement may not--may or may not materialize and that you might receive a greater sentence than you might otherwise anticipate?
 
 
 32
 MR. STERN: Yes, sir.
 
 
 33
 * * *
 
 
 34
 * * *
 
 
 35
 THE COURT: Do you understand that these commitments on the part of the United States Attorney are merely recommendations that they are going to make to the United States Probation Office, correct?
 
 
 36
 MR. STERN: Yes, sir.
 
 
 37
 THE COURT: And you understand that those recommendations are not in any way binding on the probation office?
 
 
 38
 MR. STERN: Yes, sir.
 
 
 39
 THE COURT: You understand that the probation office may not accept those recommendations?
 
 
 40
 MR. STERN: Yes, sir.
 
 
 41
 THE COURT: You understand that if the United States Probation Office does not accept those recommendations and if the Court ultimately makes findings contrary to these recommendations, that the sentence you receive may be a greater sentence than you might hope and expect under this arrangement?
 
 
 42
 MR. STERN: Yes, sir.
 
 
 43
 THE COURT: Now, you understand that if that happens, you are still bound by your plea agreement?
 
 
 44
 MR. STERN: Yes, sir.
 
 
 45
 Tr. at 8-12, 21-22 (September 28, 1988).
 
 
 46
 After defendant's plea was entered, the Probation Office prepared a presentence investigation report. On November 10, 1988, counsel for defendant filed written objections to the report, objecting, among other things: (1) to the Probation Office's finding that a firearm was possessed during the commission of the offense, resulting in a two-level guideline increase; and (2) to the Probation Office's finding that the defendant was not entitled to an offense level decrease as a result of defendant's alleged minor or minimal participation in the criminal activity.
 
 
 47
 On December 30, 1988, the district court commenced defendant's sentencing hearing, and on January 3, 1989, the court overruled the above objections to the report. The government then complied with its obligation under the plea agreement to recommend that defendant be sentenced to the "low end" of the guideline range. As indicated, the district court, however, sentenced defendant to a term of imprisonment for 108 months, approximately the average of the high and low end of the guideline range.
 
 
 48
 On appeal defendant raises three issues: (1) whether the district court erred in finding that a firearm was possessed during the commission of the offense charged, (2) whether the district court erred in concluding that defendant was neither a minor nor a minimal participant in the criminal activity, and (3) whether the district court's rejection of the government's sentencing recommendation violated the terms of the plea agreement.
 
 II.
 
 49
 This court's review of a district court sentence imposed pursuant to the Sentencing Guidelines is limited. Specifically, we are required to "accept the findings of fact of the district court unless they are clearly erroneous...." 18 U.S.C. Sec. 3742(e). In United States v. Perez, 871 F.2d 45 (6th Cir.), cert. denied, 109 S.Ct. 3227 (1989), we noted that:
 
 
 50
 A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.
 
 
 51
 Id. at 48 (quoting Archer v. Macomb County Bank, 853 F.2d 497, 499 (6th Cir.1988)).
 
 
 52
 In the present case, the defendant's first two arguments center upon the factual findings of the district court. He argues that the court erred in finding that an offense level increase was justified because of the use of firearms and that the court erred in rejecting an offense level decrease for defendant's minor or minimal participation. We disagree and hold that the district court's factual conclusions are not clearly erroneous.
 
 
 53
 The Sentencing Guidelines provide that "if a firearm or other dangerous weapon was possessed during commission of [a drug offense]," the sentencing offense level should be increased two levels. See Sentencing Guideline Sec. 2D1.1(b)(1). The commentary to the Sentencing Guidelines explains that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected to the offense." Sentencing Guidelines and Policy Statements at 2.38 (April 13, 1987).
 
 
 54
 The presentence investigation in the present case disclosed that three firearms were located in the bedroom of defendant's apartment. Two firearms were in a duffle bag in a closet that also contained a second duffle bag holding cocaine. The firearms were unloaded but ammunition was nearby. Also, a third firearm was found in a dresser along with a half-kilogram of cocaine. The district court found that "[t]here was a risk that this defendant would use those weapons in the event it was necessary for him to protect or defend his possession of those drugs. Thus "the Court can't say that it is clearly improbable that these weapons were not connected with the offense." J.A. at 37.
 
 
 55
 Under the clear language of the Guidelines, a two-level increase for the use of firearms is appropriate when a firearm was possessed during commission of the offense. See Sentencing Guideline Sec. 2D1.1(b)(1). The necessary factual finding is that a weapon was present and that its possession reflected an increased danger of violence. In this case, the district court found that defendant possessed weapons and that the weapons were connected with his offense. This conclusion is not clearly erroneous.
 
 
 56
 The Sentencing Guidelines also provide for a decrease in offense level where an individual is a minor or minimal participant in criminal activity. See Sentencing Guideline Sec. 3B1.2. (a)(b). An individual plays a "minimal" role where he or she is "plainly among the least culpable of those involved in the conduct of a group of individuals." Sentencing Guidelines and Policy Statements at 3.4 (April 13, 1987). An individual is a "minor participant" where he or she is less culpable than most others, but has more than a minimal role. Id.
 
 
 57
 In rejecting an offense level decrease under these provisions, the district court found that defendant had a substantial quantity of cocaine of a high degree of purity, that he possessed drug paraphernalia, including scales and weapons, and that by defendant's own admission his apartment functioned as a "warehouse" for the distribution of cocaine. The court found that this evidence indicated defendant was acting as a distribution point for cocaine in the area. Based on these factors, the district court found the defendant was not a person who was plainly less culpable than the average participant in the offense. We cannot say this finding is clearly erroneous.
 
 
 58
 Defendant also argues that in light of the government's concession that defendant was merely a minor participant, the Probation Office's contrary finding should have been rejected. However, as noted above, the district court carefully instructed defendant that neither the Probation Office nor the court would be bound by the government's representations or concessions. As the district court painstakingly explained to defendant, the court would have the final word in making the factual determinations relevant to application of the Guidelines. In this case, the court, pursuant to the Guidelines and pursuant to the plea agreement, was free to accept or reject, in its discretion, the government's recommendations as it saw fit. This court will not disturb the district court's factual findings unless clearly erroneous.
 
 
 59
 Defendant also argues that the district court erred in failing to comply with Fed.R.Crim.P. 11(e)(2). Rule 11(e)(2) of the Federal Rules of Criminal Procedure requires that where the government makes a nonbinding recommendation for a particular sentence pursuant to a plea agreement, "the court shall advise the defendant that if the court does not accept the recommendation ... the defendant nevertheless has no right to withdraw the plea." Although defendant asserts the district court did not properly advise him that he had no right to withdraw his plea if the district court did not accept the government's recommendation, the record clearly indicates that the district court complied with the requirements of Rule 11(e)(2). See supra, at 4-6. Accordingly, we reject this argument.
 
 
 60
 Defendant's final argument is that the government violated the terms of the plea agreement by providing the Probation Office with the government's case file. Defendant asserts that the file contained information undercutting the representations the government was obligated to make under the agreement. Defendant relies on United States v. Cook, 668 F.2d 317 (7th Cir.1982), wherein the government agreed to "not offer anything" to the Probation Office regarding the defendant's offense. Id. at 318. The government then breached its agreement by making its case file available to Probation. The Seventh Circuit held the government had not honored the agreement and allowed the defendant to withdraw his plea. Id. at 321.
 
 
 61
 In the present case, the government did not make as sweeping a promise as was made in Cook. Here the government represented only that it would make certain factual recommendations. All parties clearly understood that the Probation Office and the district court would necessarily possess all relevant information in making the ultimate fact findings. We find no error in this regard.
 
 III.
 
 62
 Accordingly, for the reasons stated, the judgment of the district court is AFFIRMED.